967 F.2d 595
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gomer T. SEVILLANO, Defendant-Appellant.
 No. 91-10418.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 13, 1992.*
Decided June 8, 1992.
 
 Before CHOY, HUG and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Gomer T. Sevillano appeals his eighteen-month sentence for credit card fraud under 18 U.S.C. § 1029(a)(2). Because the district court properly determined his sentence under the Sentencing Guidelines, we affirm.
 
 
 3
 On March 26, 1991, the United States Secret Service responded to a call at O'Shea's Casino in Las Vegas, Nevada. The casino cashier told agents that a woman, later identified as Daisy Estella Salgado, attempted to obtain a cash advance using a Wells Fargo credit card in the name of Florence M. Parise. The agents found Salgado and placed her under arrest. Salgado admitted obtaining additional cash advances at other casinos that day and that she had travelled to Las Vegas from California with five other persons for the purpose of using illegally obtained credit cards. She told agents that the others were staying at a local hotel. She gave the agents her room key, and they determined that the room was registered to Sevillano.
 
 
 4
 Agents went to the hotel. When they approached the room, they heard loud voices. One voice stated, "Come on ... What do you want to do, stay here and get busted?" At that point, one occupant opened the door and attempted to leave. The agents detained the occupants to question them and determine their identities. As the agents were patting down the room's occupants for weapons, Sevillano was observed dropping some items and attempting to kick them under the bed. The items included six counterfeit California Interim Driver's Licenses, seven commercial identification cards bearing the photographs of Salgado and the other room occupants, four credit cards issued to individuals whose names appeared on the counterfeit identification cards, and cash advance receipts totalling $3,700.
 
 
 5
 In May, Postal Service Inspectors arrested Azer Tifon Sevillano, the defendant's brother, for stealing credit cards from his mail route. Azer Sevillano gave a written statement admitting stealing credit cards since February 1991. Azer Sevillano also admitted that he had sold many of the credit cards he stole to his brother Gomer.
 
 
 6
 The defendant pleaded guilty in June 1991. At his sentencing hearing, Salgado testified that Sevillano had asked her and the others arrested in Las Vegas to accompany him to engage in credit card fraud. Sevillano reserved the hotel room, provided the credit cards purchased from his brother, and obtained the counterfeit identification cards for the others to use. Salgado testified that after they were arrested and released, Sevillano attempted to get Salgado to go to Reno, Nevada to engage in a similar scheme.
 
 
 7
 In computing Sevillano's sentence under the Sentencing Guidelines, the district court found that Sevillano's base offense level was six. The court made a two point upward adjustment for the planning involved, a five point upward adjustment for the intended loss involved in the scheme, and a four point upward adjustment for Sevillano's leadership role. The court also made a two point downward adjustment for Sevillano's acceptance of responsibility. This created a sentence range of eighteen to twenty-four months, see United States Sentencing Guidelines ("U.S.S.G."), Ch. 5, Pt. A, Sentencing Table, and the district court sentenced Sevillano to eighteen months imprisonment. Sevillano appeals the upward adjustments for his role in the offense and for the intended loss of his criminal activities.
 
 
 8
 A. Adjustment for Intended Loss.
 
 
 9
 In determining the loss attributable to Sevillano's criminal activities, the district court used the available credit card limits as a measure of "intended loss" under U.S.S.G. § 2F1.1(b)(1). Sevillano contends that the district court should have used the actual amounts the defendants had charged during their Las Vegas escapade as the measure of loss under the Guidelines. In United States v. Perez, No. 91-10425, submitted with this case, this panel addressed and rejected an identical claim made by Sevillano's co-defendant Perez. We affirm Sevillano's sentence based on the reasoning set forth in Perez.
 
 
 10
 B. Adjustment for Leadership Role.
 
 
 11
 We review legal interpretations of the Sentencing Guidelines de novo, United States v. Wilson, 900 F.2d 1350 (9th Cir.1990), and factual findings that the defendant was an organizer or leader in the criminal activity for clear error. United States v. Monroe, 943 F.2d 1007, 1019 (9th Cir.1991).
 
 
 12
 U.S.S.G. § 3B1.1(a) provides: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." The commentary to the section lists factors that courts should weigh in determining a defendant's role in the offense:
 
 
 13
 [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 14
 U.S.S.G. § 3B1.1, comment. (n. 3).
 
 
 15
 There is ample evidence to support the court's conclusion that Sevillano was a leader of the criminal activity involved here. He does not dispute that at least five persons were involved, but he argues that the above factors suggest that he was not the leader. We reject his assertion. Although it is unclear whether Sevillano received a greater share of profits than the others, it is clear that he exercised the decision-making authority in the group. Sevillano recruited the individuals for the trip to Las Vegas and attempted to recruit Salgado for another trip to Reno. Sevillano planned the trip, reserved the hotel room, and obtained the credit cards and necessary identification cards. These items were found on his person when he was arrested. When Secret Service agents approached the hotel room they heard Sevillano telling the others that they should leave before they were "busted." All of this evidence supports the conclusion that Sevillano was a leader of the criminal activity. See id. at 1019-20.
 
 
 16
 AFFIRMED.
 
 
 17
 The panel finds this case appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4.
 
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3